[Civ. No. 17651. Fourth Dist., Div. Two. Sept. 27, 1977.]

DAVID ROBERT GILBERT, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE NORTH ORANGE COUNTY
JUDICIAL DISTRICT OF ORANGE COUNTY,
Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

724

## COUNSEL

Frank L. Williams, Jr., Public Defender, and Larry B. Bruce, Deputy Public Defender, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, Oretta D. Sears and V. Clifford Harris, Deputy District Attorneys, for Real Party in Interest and Respondent.

## OPINION

**THE COURT.**—In this case we hold that Vehicle Code section 23105 (driving under the influence of a drug) is not a special statute which supplants and precludes the provisions of Health & Safety Code section 11550 (use and being under the influence of a controlled substance or a narcotics drug). Additionally, we discuss the disturbing trend of the use of extraordinary writs to circumvent the usual appeal process from municipal courts.

I

### Swann-Gilbert Rule

Petitioner was driving a motor vehicle upon a public highway. He was arrested and charged with violation of Vehicle Code section 23105 and Health & Safety Code section 11550. The municipal court denied his motion to dismiss the Health & Safety Code section 11550 count. Alleging that there was no appeal from the order of the municipal court

denying his motion to dismiss, petitioner filed a petition for writ of mandate/prohibition in the superior court. A superior court granted an alternative writ but after hearing argument on the merits denied the writ. Petitioner appeals.

■ Petitioner contends that Health & Safety Code section 11550 is a general statute and that prosecution under this general statute should be precluded because his conduct is specifically proscribed by a special statute—Vehicle Code section 23105. Petitioner relies on the so-called *Swann-Gilbert* rule (*People* v. *Swann*, 213 Cal.App.2d 447 [28 Cal.Rptr. 830]; *People* v. *Gilbert*, 1 Cal.3d 475 [82 Cal.Rptr. 724, 462 P.2d 580]) that special statutes supplant general statutes which cover the same subject matter.[1]

■ Whether such statutes overlap is basically a matter of legislative intent. ". . . a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute [citations]." (Italics in original.) (*People* v. *Ruster*, 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353].) Here, all of the elements of the general statute are not included in the special statute.

(1) Health & Safety Code section 11550 requires the use of *controlled substances or narcotics drugs* while Vehicle Code section 23105 involves the utilization of *any* drug.

(2) Health & Safety Code section 11550 requires *no act* beyond the state of being under the influence while Vehicle Code section 23105 requires the act of *driving* in conjunction with the state of being under the influence.

(3) Health & Safety Code section 11550 specifically *excepts* from its proscriptions the utilization of drugs taken at the direction of or administered by doctors while Vehicle Code section 23105 has *no such exception.* To the contrary, Vehicle Code section 23107 specifically precludes any such excuse or defense to a violation of Vehicle Code section 23105.

[1]The petitioner did not trouble himself to provide this court with a reporter's transcript of the proceeding before the superior court. Such a transcript should be included if a substantive review of the issue raised at that hearing is expected by the appealing party. Only because there is not the slightest hint that the court below ruled on some basis other than the merits of the substantive issue raised by the petition do we proceed to the merits without that transcript. See part II B of this opinion.

(4) Health & Safety Code section 11550 prohibits the *use* of certain drugs in addition to or alternatively to being under the influence of certain drugs while Vehicle Code section 23105 *does not prohibit the use of a drug.*

(5) Each statute requires *different status of "being under the influence."*

■ (a) To be under the influence within the concept of Vehicle Code section 23105, the intoxicating drug must so far affect the nervous system, the brain or muscles as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties, using care and under like conditions. (*People* v. *Haeussler,* 41 Cal.2d 252 [260 P.2d 8]; *People* v. *De La Torre,* 263 Cal.App.2d 409 [69 Cal.Rptr. 654].)

■ (b) On the other hand, being under the influence within the meaning of Health & Safety Code section 11550 merely requires that the person be under the influence in any detectable manner. "The symptoms of influence are not confined to those commensurate with misbehavior, nor to demonstrable impairment of physical or mental ability. [Citation.]" (*People* v. *Davis,* 240 Cal.App.2d 496, 501 [49 Cal.Rptr. 663].)

Cases cited by the defendant are simply not applicable. In these cases the statute in question addresses the identical crime accomplished by different means such as a theft accomplished by misrepresentations in applying for welfare. (Compare *People* v. *Barrowclough,* 39 Cal.App.3d 50 [113 Cal.Rptr. 852].)

■ Actually, when looking at the question of legislative intent, it is rather obvious that each section is a part of the distinct legislative scheme with differing aims, procedures, problems, punishment and treatment programs. One is addressed to illicit drug use, the other to dangerous driving. In construing the statute so as to effect the intent of the Legislature and to ascertain legislative intent, the court should construe the statute with reference to the whole system of law of which it is a part. (*Ruster, supra,* p. 696.)

Thus, since it was clearly not the legislative intent that one statute usurp the other and since the elements of the two offenses bear little correlation, the municipal court did not err in denying petitioner's motion to dismiss. From that determination it becomes obvious that the

superior court did not err in denying petitioner's petition for writ of prohibition/mandate. That judgment will be affirmed.

## II

### A LOOPHOLE IN OUR APPELLATE SYSTEM

#### A. A PROBLEM FOR THE LEGISLATURE

Disturbing to this court is the procedure which has allowed Mr. Gilbert to *compel* us to entertain this appeal. A flaw exists in the judicial appellate system which requires serious attention. Our purpose is to highlight aspects of this problem, not to exhaust its scholarly possibilities.

Simply put, the justice court and municipal court (hereafter referred to as inferior courts) litigants are *entitled* to far greater review protection than the superior court litigant with the identical legal problem. The yellow brick road goes like this: The inferior court litigant receives a pretrial ruling of the justice or municipal court which makes him unhappy. The ruling may or may not be appealable. The litigant files a petition for writ of mandate or prohibition in the superior court contesting that ruling. The superior court has *original jurisdiction* to entertain such writ petitions (Cal. Const., art. VI, § 10; *Bloom* v. *Municipal Court,* 16 Cal.3d 71 [127 Cal.Rptr. 317, 545 P.2d 229]) and there is no rule of law that precludes the filing of such a petition.

The inferior court litigant, discovering that he has lost in his superior court writ effort then files his notice of appeal. The appellate jurisdiction of the Court of Appeal is in those cases in which the superior court has original jurisdiction. (Cal. Const., art. VI, § 11.) Now the unhappy inferior court litigant is *entitled* to a written decision of the Court of Appeal on his pretrial ruling of the inferior court. (Cal. Const., art. VI, § 14; *Bloom* v. *Municipal Court, supra.*) Thereafter, if still unhappy, he can petition for hearing with the Supreme Court.

Lest the reader be confused, understand that the Court of Appeal is not in a position to exercise discretionary review as is the case of appeals from the appellate department of the superior court. The so-called certification/publication rules concerning that process are housed in the California Rules of Court, rule 61 et seq. and specifically apply only to "cases on appeal within the original jurisdiction of municipal and justice

courts." (Cal. Rules of Court, rule 61.) Our inferior court litigant has petitioned for a writ within the original jurisdiction of the superior court (Cal. Const., art. VI, § 10) and thus has a review *right* in the Court of Appeal. (Cal. Const., art. VI, § 11.)

Now to compare our superior court litigant unhappy with a pretrial ruling of the superior court. His recourse is simple—petition to the Court of Appeal for a writ and then on to the Supreme Court on petition for hearing. There is nothing automatic about a writ petition, the court retaining discretion as to whether or not the petition will be entertained on the merits. There is no *right to a written decision by the Court of Appeal.*

We find the difference puzzling, to say the least. We had been under the impression that more is at stake in superior court litigation which would call for greater protections at that level rather than at the justice or municipal court levels. At a minimum, one would expect essentially equal treatment between the different levels of litigants.

Turning to the appeal process, the rights are fundamentally the same as between the two classes of litigants. Tried in the inferior court, the litigant may appeal as of right to the appellate department of the superior court with further discretionary review by the Court of Appeal. Tried in the superior court, the litigant may appeal as of right to the Court of Appeal with further discretionary review by the Supreme Court.

We believe the procedure of forcing written opinions from the Court of Appeal on pretrial rulings of the justice and municipal courts to be a loophole which needs plugging. The problem is broad, involving both criminal and civil inferior court proceedings and not limited to nonappealable pretrial rulings. It is common knowledge that one reason a court may not entertain a writ petition upon its merits is that the matter is appealable. Even given appealability of the ruling, the same writ-appeal process can be followed by the inferior court litigant by claiming the appeal process is too slow to serve as an adequate remedy.

We are not the first to recognize the irregularity of the procedure. Presiding Justice Gordon Files of the Second District in December 1973 filed his opinion in *Burrus* v. *Municipal Court,* 36 Cal.App.3d 233 [111 Cal.Rptr. 539], joined by Justice Edwin Jefferson and Justice Gerold Dunn. In a well-reasoned opinion *Burrus* strongly criticized the "loophole in our appellate system."

*Burrus* was followed in 1976 with recognition of the anomaly and a Judicial Council proposal that Code of Civil Procedure section 904.1 be amended to preclude appeals from the superior court to the Court of Appeal from "a judgment denying a petition for issuance of a writ of mandamus or prohibition directed to a municipal court or a justice court or the judge or judges thereof." (1976 Judicial Council of Cal. Rep. to the Gov. and the Legis., p. 45.)[2]

Following the 1976 recommendation of the Judicial Council, in that same year an Assembly bill was drafted to effect the proposed amendment to Code of Civil Procedure section 904.1. (Assem. Bill No. 3602.) That bill encountered opposition from certain organized quarters which presumably accounts for its demise at the committee level.

---

[2]The full text from the 1976 report reads:

"The Judicial Council recommends that an apparent anomaly in the statutes be corrected by amending Code of Civil Procedure Section 904.1 so as to prohibit appeals from superior court orders denying petitions for writs of mandamus or prohibition addressed to municipal and justice courts.

"The legislative policy is to permit an appeal, as a matter of right, from judgments of municipal or justice courts; these appeals go to the superior court.[1] The legislative policy is equally clear that, except in cases of unusual importance, there is no further review after the superior court decision in a case which originated in a justice or municipal court.[2]

"It has recently been found that this legislative policy is being circumvented, however, by the device of bringing an original proceeding in mandate or prohibition in the superior court, to initiate review of municipal or justice court rulings.

"These original proceedings in the superior court are deemed appealable to the Courts of Appeal, even though a superior court determination on direct appeal, of a question which originated in a municipal or justice court would not be entitled to further review at the Court of Appeal level.

"The existence of this anomaly not only burdens the Courts of Appeal with cases which do not necessarily warrant review of the superior court determination, but also causes substantial delay in the municipal or justice court case, which typically remains pending until this further review is completed.

"The following statutory amendment is proposed to make the law more consistent.

"Code of Civil Procedure Section 904.1 would be amended to read:

"§ 904.1 Superior Courts; appealable judgments and orders·

"An appeal may be taken from a superior court in the following cases:

"(a) From a judgment, except (1) an interlocutory judgment, other than as provided in subdivisions (h), (i) and (j), (2) a judgment of contempt which is made final and conclusive by Section 1222, ~~or~~ (3) a judgment on appeal from a municipal court or a justice court or a small claims court., *or (4) a judgment denying a petition for issuance of a writ of mandamus or prohibition directed to a municipal court or a justice court or the judge or judges thereof.*

"*(b)* — *(k)* . . . ."

"[1]Civil cases: Code Civ. Proc. §§ 77(g), 904.2, 904.3; criminal cases: Pen. Code § 1466."

"[2]Civil cases: Code Civ. Proc. §§ 904.1(a)(3), 911; criminal cases: Pen. Code § 1471."

Thus, it has been nearly four years since *Burrus* exposed the disparity or "loophole" to the public eye. At this time, to the best of our knowledge, no effort is underway to correct the obvious defect in the appellate system.

*Burrus* observed that "[n]either the filing of a petition for an extraordinary writ in the superior court nor the taking of an appeal from the order of denial operates as a stay of the underlying proceeding in the inferior court. Nevertheless it often happens that the inferior court does postpone the trial of the case in order to learn what the appellate court ultimately will do." (At p. 239.) The 1976 Judicial Council Report also recognizes that the inferior court case "typically remains pending until this further review is completed." While substantial delay in the inferior court trial served as the cause for concern in the commentary of *Burrus* and the report, there is another aspect which may not heretofore have been considered. Simply, what happens if the inferior court proceeds despite the appeal and no supersedeas follows?

If the inferior court action proceeds to judgment, an appeal may be taken, as of right, to the appellate department of the superior court. Does the appellate department have jurisdiction to entertain on appeal the same issue as simultaneously pends before the Court of Appeal? If the answer is in the affirmative, which may well be the case, then which reviewing court's decision will be binding? The first to render its decision or the higher court in the judicial scheme? Note also that the Court of Appeal is technically considering the action of the superior court. This means that where the superior court denies a writ and where a Court of Appeal later reverses, the Court of Appeal may be effectually commanding the superior court to command the inferior court in some particular. But what can the inferior court do when it no longer has jurisdiction? The jurisdiction was divested by the appeal to the appellate department.

It is no answer to the dilemma to merely find that on the issue that has been appealed to the Court of Appeal, the issue does not properly lie before the appellate department. Such a position does not solve all the problems noted in the above paragraph but does add a new and again troublesome dimension. The issue before the Court of Appeal is a limited one which is not necessarily the situation faced by the appellate department. What happens when the appellate department must review the entire record to determine whether the effect of an error requires reversal while one aspect of the case rests only in the jurisdiction of the Court of Appeal and is pending? And what happens to questions

interrelated with the matter on appeal to the Court of Appeal where the interrelated items are not before the higher court? If the appellate department is to render an opinion, must its opinion be conditioned on whatever result is later contained in the opinion of the Court of Appeal? Our questions are not exhaustive of potential problems but rather only examples to highlight the serious nature of the general subject under discussion.

Certainly there will be those that find no problem at all by concluding that in all cases the inferior court proceedings *must* be stayed. Such a position lends the involuntary aid of the Court of Appeal to judicial delay even though otherwise a stay in aid of jurisdiction is discretionary. (Code Civ. Proc., § 923.) Supersedeas should only issue "where the relief is necessary to protect the *appellant* from serious injury in case of *reversal,* and will not cause the *respondent* disproportionate injury in case of *affirmance.*" (6. Witkin, Cal. Procedure (2d ed.. 1971) Appeal, § 185 et seq.)

Independently, judicial delay is a serious consideration as observed by both *Burrus* and the Judicial Council report. In *Burrus* the inferior court proceeding had been delayed over a year measured from the originally intended trial date. In the instant case the delay is also over a year. To highlight the delay aspect of the procedure we turn to the 1977 Judicial Council Report to the Governor and the Legislature where the delays in the various districts of the Court of Appeal are summarized at page 194. In civil cases, depending on the district, the median time between the filing of the notice of appeal and the filing of the opinion ranges from 10 months to 22 months. Exclusive of any delays generated by the original writ petition filed in the superior court and assuming no petition for hearing to the Supreme Court and recognizing that a Court of Appeal decision is not final until 60 days after the filing of the opinion, the minimum built-in delay ranges, as an average, from at least one to two years. Hopefully during this period witnesses do not die or move away without notice and that memories do not fade too much. We have difficulty understanding why such delay would be either permitted or desired. We suspect that the "loophole" generating our concern was not a matter knowingly created.

We think it an unassailable observation that the general statutory scheme is to favor appeals from final judgments and to disfavor appeals from interlocutory judgments and rulings. Here we deal with the denial of a motion to dismiss a count of the complaint which is clearly not

appealable except that the ruling may be reviewed in an appeal from the final judgment. We ask then—why are we considering this issue on an appeal prior to the final judgment? Answer—"loophole."

We see no special interest of the inferior court litigant which rationally necessitates the appeal right to the Court of Appeal. If Mr. Gilbert had not gone the writ petition-appeal route, his recourse would have been to the appellate department of the superior court from which appeal to this court would be a matter of our discretion. (Rule 61 et seq., Cal. Rules of Court.) It is an anomaly that appeal by right lies from a discretionary decision of the superior court while a decision on the merits on the same point by the appellate department of the superior court is not appealable to us by right. Equally it makes no sense that a superior court litigant cannot appeal to us from a pretrial ruling on the same point of law merely because the case arose from a superior court trial action. Is it not true that the superior court handles problems generally more serious in nature than do justice and municipal courts?

The key to the potentials for abuse we have paraded focus on the lack of discretion in the Court of Appeal to deny entertaining the appeal. Either the Court of Appeal should be given discretion in the type of case before us or the ability to appeal such matters to the Court of Appeal should be foreclosed.

Pretrial rulings of the justice and municipal courts should be kept within the established structure for review of final judgments. Then, if the case is of sufficient import, the matter could be certified from the appellate department to this court or that court may publish its opinion. Habeas corpus still exists for the testing of important constitutional issues.

It appears to us that the matter is of sufficient import to be of interest to the Legislature. This may seem to be a mote in the eye of the problem of judicial administration but the principle is important. Like Charles Dudley Warner's weather (in a quotation often attributed to Mark Twain), everyone talks about court reform yet little is done about it.

In our search for perfect justice we have become review happy. Still there must be realistic limitations. Currently, the justices of the Courts of Appeal, together with their attorneys and other staff, are grinding out over six thousand opinions a year. The judicial fabric is stretched thin. It would appear only reasonable that the Courts of Appeal should not be

called upon to automatically review pretrial orders from justice and municipal courts. This, of course, is a matter which should be addressed by the Legislature.

## B. SCOPE OF REVIEW AND SANCTIONS

It must be recognized that while an appeal will lie from either the grant or denial of a writ petition within the original jurisdiction of the superior court, the scope of review is not uniform.[3] In order to obtain review of the merits ruling of the inferior court, it is necessary that the superior court first entertain the substantive issue in the writ proceeding. The scope of appellate review is limited to those matters decided by the superior court.

It follows that where the superior court summarily denies the writ petition, the issue on appeal becomes whether the superior court abused its discretion in summarily denying the petition. The underlying merits of the writ petition challenging the ruling of the inferior court would not be reached.

Thus, in cases of summary denial, it must be shown the superior court abused its discretion. Since that discretion is broad and since reasons for summary denial need not be stated, it will be the rare case where an abuse of discretion can be demonstrated. For discussion of the discretionary exercise see 5 Witkin, California Procedure (2d ed. 1971) Extraordinary Writs, section 22, pages 3796-3797, and sections 123-125, pages 3899-3903.

This limited scope of review in summary denial cases was recognized in *Burrus* (at p. 236). Although the point being made is neither unique nor new, it needs reemphasis lest the concept be overlooked and unnecessary judicial time be wasted. For parties that press the summary denial to appeal there is a special danger—sanctions.

"Where the appeal is frivolous or taken solely for the purpose of delay or where any party . . . has been guilty of any other unreasonable infraction of the rules governing appeals, the reviewing court may impose upon offending attorneys or parties such penalties . . . as the

---

[3] We do not address the extent of the right to appeal by the People. While their appeal right is limited (Pen. Code, § 1238) in criminal cases, the writ is civil although the inferior court action is criminal.

circumstances of the case and the discouragement of like conduct in the future may require." (Rule 26(a), Cal. Rules of Court.) In *Burrus* the court said there was no basis for contending that the superior court abused its discretion in summarily denying the petition and leaving the applicant to his remedy by appeal. (At p. 236.) The court went on to observe that "[w]e regard the taking of an appeal from the ruling of the superior court in this kind of case as frivolous and vexatious, justifying the imposition of a penalty authorized by rule 26(a), California Rules of Court, for 'the discouragement of like conduct in the future. . . .' " (At p. 237.)

Rule 26(a) is applicable to civil cases and appeals from mandate or prohibition proceedings in the superior court are civil cases. This is true even though the underlying inferior court case may be based in criminal law. Rule 30, California Rules of Court, provides that the civil rules apply in criminal cases "except where express provision is made to the contrary, or where the application of a particular rule would be clearly impracticable or inappropriate." Thus, even if the appeal be treated as a criminal case by the reviewing court because of the type of underlying proceeding, the sanction provisions of rule 26(a) are not necessarily inapplicable.

There is no counterpart of rule 26(a) in the criminal rules on appeal (rules 30-39, Cal. Rules of Court) and sanctions to discourage like conduct in the future seem neither "clearly impracticable" nor "inappropriate" merely because the underlying action is criminal in the civil case pending before the appellate court. While the sanction provisions of rule 26(a) *might* be inappropriate in a direct criminal appeal after judgment to this court from the superior court, this is not the situation we address. We deem the circumstances quite different where pretrial rulings of justice and municipal courts wind their way to appeal in this court by means of civil writs.

In the case before us sanctions would be inappropriate for the superior court considered the substantive issue on its merits and it is a matter of first impression application of settled rules. While we believe the issue should not have reached this court by the means it did, we cannot fault the appealing party for taking advantage of the "loophole" under the circumstances of this case.

We do, however, issue our warning to those litigants that use the "loophole" for frivolous or delay purposes.

In the meantime, it is hoped that the hole in the dike will be plugged.

Judgment affirmed.